PORTO RICO FERTILIZER Co., Plaintiff and Appellee, v. A. PÉREZ & BROTHER, Defendants and Appellants.

No. 3743. Argued December 16, 1925.—Decided February 9, 1926.

Pereyó Quiñones & Pereyó, Jr., for the appellants. González Fagundo & González, Jr., for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

A judgment for plaintiff was based upon the following findings:

"And as a result of the evidence examined the court finds that on January 15, 1923, the plaintiff sold the defendants 10 tons of sugar-cane fertilizer, that is, 100 sacks of 200 pounds each, for the sum of $580.00; that said fertilizer was shipped in San Juan to the consignment of the Central Pasto Viejo, Inc., Humacao, for delivery to the defendants, and loaded on the schooner 'Witch', Captain Gonzalo Carrillo, which arrived at the port of Humacao on January 29,

1923, and unloaded its cargo on the dock of Antonio Roig; that the said fertilizer was received by the consignee, Central Pasto Viejo, Inc., of which the defendants are *'colonos'* (planters), and transported to the plantations of said defendants; that on March 15, 1923, the Central Pasto Viejo, Inc., sent an invoice to A. Pérez & Hermano for lighterage and transportation to their lands of the said 100 sacks of fertilizer, the said invoice being included in the statement of accounts which they accepted as correct on June 13, 1923, and liquidated; that the defendants have not paid the plaintiff the amount of the fertilizer sold nor the maritime assurance, taxes and freight, amounting to $6.75, $2.00 and $20.00 respectively, notwithstanding that said amounts are due and owing and that request therefor has been made by Mr. Reed, President and General Manager of the said company.

"The complaint recites that there was an express agreement for the payment of interest at the rate of 8% per annum, and in the statement of account a charge of $47.10 is made for that item, but there is no evidence of the alleged agreement to pay interest and a mere charge therefor in the account is not enough. Hence, that amount should be stricken from the claim."

The assignment of errors specifies that—

"1.—The court erred in admitting in evidence the invoice of January 15, 1924.

"2.—The court erred in admitting in evidence page No. 136 of a book said to contain the account of A. Pérez & Hermano from the books of the corporation, Porto Rico Fertilizer Co.

"3.—The court erred in admitting in evidence a bill of lading signed by witness Gonzalo Carrillo.

"4.—The court erred by making a wrong use of its judicial discretion in weighing the evidence and in rendering a judgment incompatible therewith."

The page from the loose-leaf ledger and the statement or memorandum referred to in the first and second paragraphs last above quoted were identified by the president and general manager of the plaintiff corporation as the original entry and voucher made and kept in the usual course of business of such corporation. This witness admitted, however, that he had no personal knowledge of the transaction and that at the time thereof he was not on the Island of

Porto Rico nor in any way connected with or interested in the Porto Rico Fertilizer Co. But he also stated that the bookkeeper who made such original entry was not at the time of the trial an employee of the plaintiff.

It must be conceded that this was not a very satisfactory showing as to the unavailability of the former bookkeeper as a witness, and the better practice would have been to exclude the evidence.

Nevertheless, the court had some discretion in the matter. 3 Wigmore, section 1530, pages 276, 278. And in the instant case, all things considered, especially the evidence *aliunde* as to shipment and delivery of goods, we find no such abuse of that discretion as to warrant a reversal upon that ground alone.

"In view of the growth in modern times of the system of using 'loose-leaf' books of account, it would seem clear that leaves from such books should be competent, and they are held to be so." 22 C. J. p. 870, section 1045.

See also *Lama y Méndez* v. *Betancourt*, 16 P.R.R. 265, and *Porto Rican American Tobacco Co.* v. *Canel*, 32 P.R.R. 509.

While the captain of the "Witch" was on the stand the following incident occurred:

"Look. What is this?—The bill of lading of the shipment.

"And is this your signature?—Yes, sir.

"We propose to offer the document in evidence.

"Attorney Pereyó: Over our objection because this is *self-serving evidence* and cannot be admitted in evidence.

"Attorney González: I understand that *self-serving evidence* is a document prepared by the defendant, or by the plaintiff, but not by a ship or by a person charged with transporting such merchandise.

"Judge: The court admits the document to explain the testimony of the witness and marks it 'Exhibit No. 3.'

"Attorney Pereyó: I except."

Appellants cite no authority either to show that "self-serving" evidence as such is inadmissable or that a bill of

lading signed by the captain of a schooner is such evidence when offered in a controversy between consignor and consignee.

The fourth proposition relied upon by appellants is somewhat more plausible. The evidence as a whole leaves much to be desired. Had the district court rendered judgment for defendants plaintiff would have had little ground for complaint.

This, however, would follow from the weakness of the *prima facie* case as made by plaintiff rather than any satisfactory showing on the part of defendants.

The evidence on both sides was open to serious doubt and the burden was upon plaintiff. But we are unable to say that the court erred either in its findings or in its conclusions based thereon.

The judgment appealed from must be affirmed.